■ In the Matter of CHARLES A. LUISI, Respondent, v HOWARD E. SAFIR et al., Appellants. [691 NYS2d 449] —Order, Supreme Court, New York County (Louise Gruner Gans, J.), entered April 10, 1998, annulling the determination of the Board of Trustees of the Police Pension Fund, Article II (Board of Trustees), that denied petitioner accident disability retirement benefits and awarding petitioner those benefits, unanimously reversed, on the law and the facts, without costs, and the matter remanded to the Board of Trustees for review of the evidence presented in the petition and answer.

At the time of his accident, petitioner was a Deputy Inspec-

tor serving as Commanding Officer of Manhattan South Detective Operations. He was assigned a police vehicle for his use within New York City limits. Since he lived in a suburb, he typically drove his own car into the Bronx and then exchanged it for his police car in the parking lot of the police facility in the Bronx known as the Outdoor Range. On March 4, 1996, his tour of duty in Manhattan was scheduled to begin at 10:00 A.M. At 9:36 A.M., while in Mount Vernon on his way to work, petitioner was paged by the Manhattan Detective Bureau to respond to a homicide scene. The police dispatcher told him to proceed directly to the crime scene instead of reporting to his office. As petitioner was in the Bronx police parking lot at about 10:00 A.M., he slipped and fell on ice, injuring his back. He was taken to the hospital.

The Medical Board of the Police Pension Fund, Article II (Medical Board), determined that petitioner had sustained a disabling injury and recommended that he receive accident disability retirement (ADR) benefits. The Medical Board's finding of disability is not in dispute. The critical issue before the Board of Trustees was whether petitioner was "in city-service" at the time of his accident, which is a condition precedent to receipt of ADR pursuant to Administrative Code of the City of New York § 13-252. Notwithstanding the Medical Board's recommendation, it is up to the Board of Trustees to determine whether the events giving rise to the disability occurred in the line of duty (*Pamlanye v McGuire*, 111 AD2d 721, 723).

The City trustees took the position that since petitioner was approaching his police vehicle at the normal time to report for his tour of duty, the fact that he was going to report to a crime scene instead of the precinct was irrelevant: he was merely engaged in his regular commute, which does not constitute being on duty (*Matter of Alessio v New York City Employees' Retirement Sys.*, 67 NY2d 978). The police union trustees argued that from the moment he became involved in the homicide investigation, i.e., when he responded to the 9:36 A.M. call, petitioner was on duty. The fact that it roughly coincided with the start of his scheduled shift was merely fortuitous.

Trustee John Driscoll stated that it was Manhattan Detective's practice to log police officers in as "on duty" as soon as they phoned in their response to a call (as petitioner did). Unfortunately, Driscoll said, the dispatcher's records for that day were lost. The union trustees also emphasized that the Police Department's line-of-duty injury report relating to petitioner's accident stated that he was on duty, though the Department's definition did not necessarily apply the same legal standards that the Board of Trustees must apply.

Captain Driscoll and other officers additionally alleged that for high-ranking officers such as petitioner, the actual times their tours started were somewhat flexible (a fact disputed by Commissioner Wuensch, a City representative and the Chairman of the Board of Trustees). Thus, argued the union trustees, it was inappropriate to treat the formal 10:00 A.M. to 6:00 P.M. schedule as the dispositive factor. It would be more realistic to say he was put on duty as soon as the dispatcher passed along the order for petitioner to direct the investigation of this particular high-profile homicide. By contrast, the City trustees emphasized the coincidence of his scheduled tour with the time of the dispatcher's call, opining that the result would be different if petitioner had been called on a weekend or earlier that morning.

The union trustees voted unanimously to award petitioner ADR, and the City trustees voted unanimously to award him ordinary disability retirement benefits, a lesser amount. When such a tie vote occurs, ADR is denied (*City of New York v Schoeck,* 294 NY 559).

Petitioner then commenced the instant CPLR article 78 proceeding, challenging the denial of ADR as arbitrary and capricious. He annexed to his petition and reply some additional proof that was not before the Board of Trustees. First, in his affidavit, he added the allegation that after he started the ignition in his police vehicle, he went back to the Outdoor Range security booth and telephoned two other officers, Sergeant Maher and Captain Cosenza, to obtain information about the homicide and instruct them how to handle the evidence at the crime scene while he was en route. It was only when he returned to his police car that he slipped and fell. Petitioner points out that in *Matter of De Zago v New York State Police & Firemen's Retirement Sys.* (157 AD2d 957), ADR was awarded to a police officer who was injured 15 minutes before his tour of duty began, because he had actually already begun working.

Second, petitioner submitted the affidavit of Assistant Chief John Hill, the commanding officer of Manhattan Detectives, who confirmed that he had directed the dispatcher to order petitioner to the crime scene right away. Third, petitioner presented overtime records from other days when he had been paged to respond to a crime scene before his normal tour of duty began. These records appeared to show that he had been paid overtime from the time of the notification, not the time of arrival at the scene.

The IAS Court annulled the Board's determination and awarded petitioner ADR benefits. The court held that the evidence presented by petitioner was sufficient as a matter of law to support his contention that he was on duty. However, in doing so, the court relied on information that had not been presented to the Board (*Matter of Windsor Place Corp. v State Div. of Hous. & Community Renewal*, 161 AD2d 279, 280). A court's role in an article 78 proceeding of this nature is not to determine the merits de novo, but to decide whether the Trustees' decision was rational, based on the evidence actually before them (*Matter of Rocco v Board of Trustees*, 98 AD2d 609, *appeal dismissed* 62 NY2d 803). We cannot say that it was arbitrary and capricious for the Board to fail to consider evidence not before it (*Matter of Rocco v Board of Trustees, supra*, at 610).

Here, the court explicitly noted its reliance on the new documents. Moreover, some of its key factual findings—such as that petitioner made several phone calls from the Outdoor Range to officers involved in the investigation before he fell—could only have been gleaned from those documents. The actual telephone records were in the control of the Police Department. This evidence, which brings petitioner's case within the ambit of *Matter of De Zago* (*supra*) was never before the Board.

The court appeared to take as a given that "pursuant to established police policy and practice [petitioner] was immediately placed on-duty when he responded to the beep". Yet at the Board hearing, the only evidence of this policy was Trustee Driscoll's representations, which were without supporting documentation because the dispatcher's records of that day were supposedly lost. Petitioner's overtime records, which provide far more support for the IAS Court's conclusion, were not before the Board for this purpose.

Accordingly, we reverse and remand for a new hearing before the Board of Trustees, at which the Board should consider all of the evidence which was available, including that which was available within the Police Department itself, but which was not before the Board of Trustees. Concur—Rosenberger, J. P., Mazzarelli, Rubin, Saxe and Buckley, JJ.